United States District Court
Southern District of Texas
**ENTERED**
July 26, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE JAGANNATHAN MAHADEVAN, | § | |
| | § | |
| Debtor. | § | |
| | § | |
| _____ | § | |
| | § | |
| JAGANNATHAN MAHADEVAN | § | CIVIL ACTION NO. H-22-208 |
| | § | BANKRUPTCY CASE NO. 21-30545 |
| | § | ADV. PROCEEDING NO. 21-03054 |
| | § | |
| Appellant, | § | |
| | § | |
| VS. | § | |
| | § | |
| PREM BIKKINA, | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM AND OPINION**

In February 2018, Prem Bikkina obtained a $776,000 judgment in California state court against Jagannathan Mahadevan on claims of negligence, defamation, and intentional infliction of emotional distress. Unable to pay the judgment, Mahadevan filed for bankruptcy. Bikkina initiated an adversary proceeding, arguing that the state-court judgment was a nondischargeable debt under 11 U.S.C. § 523(a)(6), because the debt was "for [a] willful and malicious injury by [Mahadevan] to [Bikkina]." 11 U.S.C. § 523(a)(6). The bankruptcy court agreed, granting summary judgment for Bikkina on the nondischargeability of the judgment debt. For the reasons that follow, this court reverses the bankruptcy court's order and remands the action for further proceedings.

## I.   Background

Mahadevan was a professor, and Bikkina a graduate student, at the University of Tulsa. Mahadevan was Bikkina's dissertation advisor from 2007 to 2010, when Bikkina was assigned a

new advisor.  The reassignment came after Bikkina complained that Mahadevan was intentionally delaying his progress toward his Ph.D.

In 2011, Bikkina published two papers in science journals.  Mahadevan publicly claimed that Bikkina had plagiarized Mahadevan's work, infringed Mahadevan's copyright, and misappropriated his intellectual property.  Mahadevan filed a complaint against Bikkina with the University of Tulsa and contacted Bikkina's coauthor, employer, and coworkers, claiming that Bikkina had plagiarized and falsified data in his two published papers.  The University of Tulsa investigated and concluded that Bikkina had not plagiarized the papers.  Mahadevan disputes the University's administrative process and findings.

Bikkina sued Mahadevan in California state court, asserting claims of negligence, defamation, and intentional infliction of emotional distress, and seeking compensatory and punitive damages.  A jury awarded Bikkina $776,000 in compensatory damages and found that Bikkina was entitled to punitive damages.  The jury did not determine the amount of punitive damages because Mahadevan agreed to waive his right to appeal the judgment in exchange for Bikkina waiving his right to punitive damages.

On February 15, 2018, a few days after the jury verdict, but before the state court entered judgment, Mahadevan filed a petition for Chapter 13 bankruptcy in the Southern District of Texas, generating an automatic stay order.  That same day, but a few hours after Mahadevan filed for bankruptcy, the California state court entered judgment.  (Docket Entry No. 2, at 209).  The automatic stay expired on March 19, 2018, when Mahadevan moved to dismiss his bankruptcy proceedings.  On August 1, 2018, the California state court entered an amended judgment in Bikkina's favor for $790,256.88, the actual damages awarded plus costs and postjudgment interest. (*Id.*, at 96).

2

Even though Mahadevan had waived his right to appeal in exchange for Bikkina waiving his right to punitive damages, Mahadevan appealed the judgment and amended judgment, arguing in part that they were void because they were entered after the bankruptcy filing and automatic stay.  (*Id.*, at 111).  The appellate court rejected Mahadevan's arguments and upheld the verdict and judgment.  Mahadevan's further appeals failed.

In April 2020, Bikkina domesticated the California judgment in Texas, where Mahadevan resides.  Shortly after, in July 2020, Mahadevan sued Bikkina and three other defendants in federal court in the Northern District of Oklahoma, alleging that Bikkina had infringed Mahadevan's copyright, violating his rights under the Lanham Act and Copyright Act and violating his due process rights under 42 U.S.C. § 1983.  Mahadevan sought an injunction prohibiting Bikkina from enforcing the California judgment and amended judgment.  The Oklahoma federal district court denied the injunction, holding that it lacked subject-matter jurisdiction over Mahadevan's § 1983 claim and that claim would fail in any event because Mahadevan had not alleged that Bikkina acted under color of state law.  *See Mahadevan v. Bikkina*, Case No. 4:20-cv-00536 (N.D. Okla.) (Docket Entry No. 51).  Mahadevan's Lanham Act and Copyright Act claims remained.

On February 10, 2021, while his Lanham Act and Copyright Act claims were pending in Oklahoma federal court, Mahadevan filed a petition for Chapter 7 bankruptcy in the Southern District of Texas.  Mahadevan largest debt is Bikkina's state-court judgment.  Bikkina moved in the Oklahoma federal court to stay Mahadevan's Oklahoma federal lawsuit, which that court granted.  *See id.* (Docket Entries Nos. 57, 58, 60).  The Chapter 7 trustee then settled Mahadevan's federal claims, over Mahadevan's objections, and transferred Mahadevan's interests in "certain copyright certificates, intellectual property rights, causes of action, and litigation rights" to Bikkina, the University of Tulsa, and others, in exchange for $20,000 and a mutual release of

3

claims. *In re Jagannathan Mahadevan*, Case No. 21-30545 (Bankr. S.D. Tex.) (Docket Entries Nos. 28, 39).

On April 14, 2021, Bikkina initiated this adversary proceeding in the Southern District of Texas Bankruptcy Court. Bikkina asserted that the California state-court judgment was nondischargeable under 11 U.S.C. § 523(a)(6) because the debt "derive[d] from 'willful and malicious injury.'" (Docket Entry No. 2, at 75 (quoting 11 U.S.C. § 523(a)(6)). Mahadevan moved for summary judgment, arguing that the California judgment was dischargeable, as a matter of law. (Docket Entry No. 2-1, at 1). Bikkina cross-moved for summary judgment, arguing that collateral estoppel (issue preclusion) barred Mahadevan from relitigating whether the California judgment was dischargeable, because the California jury had already determined that Mahadevan's "conduct in incurring the debt owed to [Bikkina] was 'willful and malicious.'" (Docket Entry No. 2, at 75).

The bankruptcy court held a hearing on the motions and determined that "collateral estoppel applie[d]" and that the California state-court judgment against Mahadevan and in favor of Bikkina was nondischargeable in Mahadevan's bankruptcy under 11 U.S.C. § 523(a)(6). (Docket Entry No. 2-1, at 589). The court granted summary judgment to Bikkina. (*Id.*, at 581). Mahadevan appealed.

## II.     The Legal Standards for Appellate Review and Summary Judgment

"[T]raditional appellate standards" apply to the district court's review on an appeal from a bankruptcy court's judgment or order under 28 U.S.C. § 158(a)." *Stern v. Marshall*, 564 U.S. 462, 475 (2011). This court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003). The bankruptcy

court's interpretation of Section 523(a)(6) is a question of law and is reviewed de novo.  *Id.*; *see also In re Hickman*, 260 F.3d 400, 401 (5th Cir. 2001).

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citations and internal quotation marks omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Lamb v. Ashford Place Apartments LLC*, 914 F.3d 940, 946 (5th Cir. 2019) (citation and internal quotation marks omitted).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor."  *Waste Mgmt. of La.,*

*LLC v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

## III.    Analysis

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).  Only an "honest but unfortunate" debtor is entitled to an unencumbered fresh start.  *Id.* at 287.  Under § 523(a)(6), debts obtained by "willful and malicious injury by the debtor to another entity or to the property of another entity" are not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).

"The United States Supreme Court has established guidelines for determining whether a debt arises from a willful and malicious injury and, therefore, is excepted from discharge under Section 523(a)(6)."  *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1998)).  In *Kawaauhau*, the Supreme Court held that § 523(a)(6) applies to "acts done with the actual intent to cause injury."  523 U.S. at 61.  "Willful," as used in § 523(a)(6), "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  *Id.* (emphasis in original).  An actor must "intend 'the consequences of an act,' not simply 'the act itself.'"  *Id.* at 61–62 (citing *Restatement (Second) of Torts* § 8A, cmt. a (1964)); *see also In re Williams*, 337 F.3d at 509 ("Despite similarities in the language used to describe an injury under Section 523(a)(6) and intentional torts, Section 523(a)(6) creates a narrower category of tortious

conduct."). Section 523(a)(6) does not discharge debts arising from negligently or recklessly inflicted injuries. *Kawaauhau*, 523 U.S. at 59.

"Applying the Supreme Court's pronouncement that Section 523(a)(6) requires actual intent to cause injury, the Fifth Circuit has held that for a debt to be nondischargeable, a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *In re Williams*, 337 F.3d at 508–09 (citing *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)). In the Fifth Circuit, the "test for willful and malicious injury under Section 523(a)(6) . . . is condensed into a single inquiry of whether there exists 'either an objective substantial certain of harm or a subjective motive to cause harm' on the part of the debtor." *Id.* at 509.

"Substantial certainty of harm" does not mean "absolute certainty," but it does require more than a "high probability." *In re D'Amico*, 509 B.R. 550, 561 (S.D. Tex. 2014). For example, in *Corley v. Delaney* (*In re Delaney*), 97 F.3d 800 (5th Cir. 1996), the Fifth Circuit held that a debtor did not act with "substantial certainty" to cause injury "when [the] shotgun, which [the debtor] had intentionally loaded, carried, and aimed at [the creditor] through the car's windshield, went off by accident," after the debtor "with his finger on the trigger—twice tapped the gun barrel on the windshield of the [the creditor's] car." *Id.* at 801. Even though the debtor "unquestionably acted intentionally when he loaded the shotgun, took it with him to the confrontation with [the creditor], and, with his finger on the trigger, twice tapped the barrel of the gun on the windshield of the car to get [creditor's] attention," "the firing of the gun was neither deliberate nor intentional; on the contrary, it was wholly unintentional, even though possibly not wholly unforeseeable." *Id.* at 802–03. By contrast, in *Red v. Baum* (*In re Red*), 96 F. App'x 229 (5th Cir. 2004), the Fifth Circuit held that a debtor acted with substantial certainty when he intentionally drove his car into a crowded bar, killing the creditors' relatives. *Id.* at 230. "Unlike in *Delaney*,"

the court "found that [the debtor] did intentionally commit an action—driving into a crowded bar—that was 'substantially certain' to cause harm." *Id.* at 231; *see also In re D'Amico*, 509 B.R. at 562–63 (discussing *Delaney* and *Red*).

Bikkina argues that the $776,000 California state-court judgment in his favor is nondischargeable because the judgment debt arose from a willful and malicious injury. Bikkina, as the creditor, bears the burden of proving the elements of § 523(a)(6) by a preponderance of the evidence. *See Grogan*, 498 U.S. at 287. Bikkina argues that the state-court jury found that Mahadevan acted with an objective substantial certainty that Mahdaven would suffer injury or with a subjective motive to inflict injury in Bikkina. In moving for summary judgment in the bankruptcy court, Bikkina argues that collateral estoppel precluded relitigating the jury's determination that Mahadevan had caused "willful and malicious injury" to him within the meaning of § 523(a)(6).

Issue preclusion, or collateral estoppel, applies to nondischargeability findings under § 523(a). *Grogan*, 498 U.S. at 284 n.11. Federal courts must give full faith and credit to state-court judgments. To determine the preclusive effect of a state-court judgment, federal courts apply the preclusion law of the state in which the judgment was entered. *In re Plunk*, 481 F.3d 302, 307 (5th Cir. 2007). California law on issue preclusion applies.

 Under California law, collateral estoppel applies when: (1) the issue sought to be precluded from relitigation is identical to the issue decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision was final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. *In re Plyam*, 530 B.R. 456, 462 (B.A.P. 9th Cir. 2015) (citing *Lucido v. Super. Ct.*, 51 Cal.3d 335, 341 (1990)).

8

Mahadevan argues that the bankruptcy court erred in its issue preclusion analysis, because the state-court judgment was not final and because neither the jury nor the state court decided that Mahadevan acted with willful and malicious intent to injure when he inflicted emotional distress, acted negligently, and defamed Bikkina.  Mahadevan's first argument is unpersuasive, but the second argument fares better.

## A.      Final Judgment on the Merits

Mahadevan argues that issue preclusion does not apply to the California state-court judgment, because "collateral estoppel does not apply to a void judgment." (Docket Entry No. 4, at 36).  Mahadevan argues that the California judgment is void because it was entered in violation of the automatic stay that arose when he filed for bankruptcy.  (*Id.*).  A few days after the jury verdict, but before the state court entered final judgment, Mahadevan filed a petition for Chapter 13 bankruptcy in the Southern District of Texas, generating an automatic stay order.  That same day, but after Mahadevan filed for bankruptcy, the court entered the judgment.  (Docket Entry No. 2, at 209).

Mahadevan already raised this argument in the California appeals court in his direct appeals of the judgment against him.  The California appeals court rejected the argument, stating as follows:

> Mahadevan argues the judgment is void because it was entered in violation of the automatic stay created by his bankruptcy filing. . . .  The filing of a bankruptcy petition operates as an automatic stay of the commencement or continuation of any action against a bankrupt debtor or against the property of a bankruptcy estate. Actions taken in violation of the stay are void, even where there is no actual notice of the stay.  Mahadevan asserts it is undisputed that the judgment was entered several hours after he filed for bankruptcy, so that the judgment is necessarily void. He further contends that because the judgment was void, the amended judgment is likewise void.  We disagree.
>
> Federal courts have recognized an exception to the automatic bankruptcy stay for ministerial acts.  This exception stems from the common-sense principle that a

9

judicial "proceeding" within the meaning of [Title 11 United States Code] section 362(a) ends once a decision on the merits has been rendered. Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding. . . .

The ministerial principle applies here. The jury's verdict rendered the decision on the merits of Bikkina's claims and the parties' subsequent stipulation to waive the punitive damages phase of the trial . . . resolved the only other pending issues. At that point, no further deliberation or decision by the jury or the court on those claims was necessary or permitted. . . .

Even if the original judgment were void for violating the automatic bankruptcy stay, the trial court's entry of the amended judgment cured any violation. If the original judgment were void, as Mahadevan contends, then the amended judgment was the first judgment entered in this case. Because the automatic bankruptcy stay expired in March 2018, [before the amended judgment was entered], the entry of the amended judgment did not violate the stay.

(Docket Entry No. 2, at 113–14 (internal citations and quotation marks omitted)).

The original judgment in the California state action was properly entered under the ministerial principle, and the amended judgment was properly entered after the bankruptcy stay had expired. There is no violation of the stay order.

## B.    Actually Litigated and Decided

The California state-court jury returned a verdict finding that Mahadevan was negligent, inflicted emotional distress, and defamed Bikkina by accusing him of fabricating, falsifying, and plagiarizing two published papers. (Docket Entry No. 2-1, at 549–554). The verdict stated that the jury found "by clear and convincing evidence that any of the conduct for which [the jury] found Jagan Mahadevan liable to [Bikkina] was engaged in with malice, opression [sic], or fraud." (*Id.*, at 553–54).

At summary judgment, Bikkina submitted as evidence the state-court judgment, amended judgment, special verdict form, and jury instructions. Bikkina did not submit any trial transcripts. Bikkina argued that the evidence he did submit shows that Mahadevan's "malicious and willful"

intent was actually litigated and decided in the California state court.  The bankruptcy court agreed,

issuing the following short ruling at the hearing:

> With respect to the assertion of collateral estoppel, again the parties agree on what
> the elements are, they simply disagree on the application of those factors to the facts
> that are present in this case.  So as I look at this, . . . there are three claims that under
> ordinary circumstances would be dischargeable, but in this case those three claims
> simply represent the calculation of damages and how you get to the amount.  The
> jury verdict stands on its own, and the jury found that the conduct—and I won't
> repeat what it says.  I mean, the jury passed on the issue of the nature of the conduct
> and whether it is the subject[ive] or the objective standard that the Fifth Circuit
> imposes in looking at this, there is no question in my mind that the jury verdict
> satisfies the requirement, such that collateral estoppel applies.  So I'm going to
> grant the Plaintiff's Motion for Summary Judgment.  I'm going to deny the
> Defendant's Motion for Summary Judgment.  Those are my Findings and
> Conclusions on the Record[.]

(Docket Entry No. 2-1, at 801–02).

While the bankruptcy court is entitled to clear error review on its findings of fact, the court

did not make any findings of fact on the record.  The judge did not explain the basis for concluding

that the California jury had "passed on the issue of the nature of the conduct" or why there was

"no question in [the judge's mind] that the jury verdict satisfies the requirement, such that collateral

estoppel applies."  A careful review of the evidence submitted by Bikkina on summary judgment

undermines the conclusion that the California "jury passed on the issue of the nature of

[Mahadevan's] conduct" and found that he had acted with malicious and willful intent to harm

Bikkina.

The jury first determined that Mahadevan was negligent.  The jury was instructed that to

establish negligence, Bikkina needed to prove "1. That Jagan Mahadevan was negligent; 2. That

Prem Bikkina was harmed; and 3. That Jagan Mahadevan's negligence was a substantial fact or in

causing Prem Bikkina's harm."  (Docket Entry No. 2-1, at 59).  The jury was instructed that

"[n]egligence is the failure to use reasonable care to prevent harm to oneself or to others."  (*Id.*).

11

On the special verdict form, the jury was asked to answer two questions: "1. Was Jagan Mahadevan negligent?" and "2. Was Jagan Mahadevan's negligence a substantial factor in causing harm to Prem Bikkina?"  The jury answered "yes" to both questions.  (*Id.*, at 549).

The jury was then asked to determine whether Mahadevan had intentionally inflicted emotional harm on Bikkina.  Despite the name of this tort, intentional infliction of emotional distress under California law does not require a finding that the defendant acted with subjective or objective intent to cause emotional harm.  In California, intentional infliction of emotional distress requires proof that the defendant's conduct was outrageous, that the defendant intended to cause *or recklessly disregarded* the probability of causing emotional distress, and that the plaintiff's severe emotional distress was proximately caused by the defendant's conduct.  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004); *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

The jury in the California case was instructed that Mahadevan could be found liable for this tort if he "intended to cause Prem Bikkina emotional distress" *or* if he "acted with reckless disregard of the probability that Prem Bikkina would suffer emotional distress."  (Docket Entry No. 2-1, at 63).  The jury was asked on the special verdict form whether Mahadevan intended to cause Prem Bikkina emotional distress or if he "act[ed] with reckless disregard of the probability that Prem Bikkina would suffer emotional distress."  (*Id.*, at 550).  The jury answered "yes," without deciding whether Bikkina acted with intent or with reckless disregard.

Finally, the jury determined that Mahadevan had defamed Bikkina.  As with intentional infliction of emotional distress, a defamation claim under California law requires only that the plaintiff show intentional conduct, not intent to harm.  To succeed on a defamation claim in California, a plaintiff must prove that there was "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injury or that causes special damage."

12

*Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (citation omitted).  "None of these elements involves an intent to injure the plaintiff," and none of these elements requires "that an injury be substantially certain."  *In re Kauanui*, No. 14-00077, 2015 WL 359088, at *3 (Bankr. D. Haw. Jan. 23, 2015) (discussing the dischargeability of a California defamation claim); *see also Oleumtech Corp. v. Sheriff*, No. SACV-12-01199, 2013 WL 12121871, at *8 (C.D. Cal. 2013).

The jury was instructed that Mahadevan could be liable for defamation if they found that "Mahadevan made one or more of [the described] statement(s) to a person or persons other than Prem Bikkina"; "[t]hat this person or these people reasonably understood that the statement(s) were about Prem Bikkina"; that "this person or these people reasonably understood the statement(s) to mean that plaintiff had fabricated or falsified all of the part of the contents of [the papers] [and] had plagiarized [the papers]"; and "[t]hat Jagan Mahadevan failed to use reasonable care to determine the truth or falsity of the statement(s)."  (Docket Entry No. 2-1, at 68).  The jury answered the special verdict form questions with findings that Mahadevan had made certain statements about Bikkina's work; that the statements were defamatory; that the statements were not "substantially true"; and that "Jagan Mahadevan fail[ed] to use reasonable care to determine the truth or falsity of the statement(s)."  (*Id.*, at 552).

None of the jury's findings as to negligence, intentional infliction of emotional distress, or defamation is a finding that Mahadevan acted with an objective or subjective intent to harm Bikkina.  "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Kawaauhau*, 523 U.S. at 64.  For the intentional infliction of emotional distress claim, the jury was asked to decide whether Mahadevan had acted with an intent to harm Bikkina *or* if he had acted with reckless disregard of the probability of harming Bikkina.  For the defamation claim, the jury was asked whether Mahadevan had failed to use reasonable care—a

negligence standard—in learning of the "truth or falsity" of the defamatory statements.  The jury was not asked to decide whether Mahadevan *knew* that the statements were false, but spread them anyway, knowing they would harm Bikkina.  *Cf. In re Marshall*, 264 B.R. 609, 630 (C.D. Cal. 2001) ("Libel and defamation claims are nondischargeable under § 523(a)(6) when the statements were made with actual knowledge of their falsity."); *In re Mason*, 1999 WL 58579, at *3 (Bankr. S.D.N.Y. 1999) ("The intentional tort of defamation may constitute 'willful and malicious injury' by the debtor to another entity under § 523(a)(6) of the Bankruptcy Code, as long as the debtor knew the published statements were false.").  Indeed, Mahadevan has consistently asserted that he believes that Bikkina plagiarized Mahadevan's research.

For collateral estoppel to apply to the California judgment, the parties needed to actually litigate, and the jury needed to actually decide, that Mahadevan acted with an intent to harm.  A judgment for negligence, intentional infliction of emotional distress, and defamation, "without additional specific findings [as to intent], do[] not establish that the defendant acted willfully and malicious under section 523(a)(6)."  *In re Kauanui*, 2015 WL 359088, at *3; *see also In re Dang*, 560 B.R. 287, 293 (S.D. Tex. 2016) (noting that "[d]isjunctive jury instructions in state-court judgments," such as whether there was "willful, malicious *or* reckless misconduct," "make it difficult for a bankruptcy court to give preclusive effect to that judgment in deciding whether the judgment debt is nondischargeable").  The jury instructions and the verdict form do not, alone, support the finding that Mahadevan acted with an intent to harm.  And while a court can look beyond the judgment and instructions to see if the "evidence produced in the state-court proceedings" supports a finding of intent, Bikkina did not submit any evidence or transcripts from the state-court proceeding in his motion for summary judgment.  *Cf. In re Rabalais*, Adv. No. 11-03167, 2012 WL 42101, at *4 (S.D. Tex. Jan. 9, 2012) (considering "the presentation of testimony

and evidence" in the state-court litigation in deciding whether the creditor's claims against the debtor were nondischargeable under 11 U.S.C. §§ 523(a)(2) and (4)).

The bankruptcy court recognized that these three causes of action are typically dischargeable in bankruptcy. The court briefly stated, without explanation, that "the jury passed on the issue of the nature of the conduct" and found it willful and malicious. The court may have been referring to the California jury's separate finding that Bikkina was entitled to punitive damages. The jury was asked, and answered "yes," to the question: "Do you find by clear and convincing evidence that any of the conduct for which you found Jagan Mahadevan liable to Plaintiff was engaged in with malice, oppression, or fraud?" (Docket Entry No. 2-1, at 553–54).

A jury finding of "malice, oppression, or fraud" under California law is required for punitive damages, but it does not equate to a finding of "willful and malicious conduct" under § 523(a)(6). "The 'malice, oppression or fraud' finding [for punitive damages] arises from California Civil Code § 3294." *In re Plyam*, 530 B.R. 456, 465 (B.A.P. 9th Cir. 2015). "Civil Code § 3297 provides statutory definitions of these terms." *Id.* "Malice" is defined as either: "(1) conduct that the defendant intends to cause injury to the plaintiff ('Intentional Malice'); or (2) despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others ('Despicable Malice')." *Id.* (citing Cal. Civ. Code § 3294(c)(1)). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that persons' rights." *Id.* (quoting Cal. Civ. Code § 3294(c)(2)). And "fraud" means "an intentional misrepresentation, deceit, or concealment of a material fact known to the person with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.* (quoting Cal. Civ. Code § 3294(c)(3)). A finding of malice, oppression, or fraud, can supply "an independent basis for a punitive damages award." *Id.*

15

"Only [i]ntentional [m]alice . . . and fraud expressly require an intent to cause injury." *Id.* Despicable malice and oppression do not. A person can engage in despicable malice or oppression by acting in "conscious disregard" of another person's rights. "As defined by the California Supreme Court," "a person acts with conscious disregard of another's rights . . . when he is aware of the probable dangerous consequences of his conduct and he willfully and deliberately fails to avoid those consequences." *Id.* (citing *Taylor v. Super Ct.*, 24 Cal.3d 890, 895–96 (1979)). "In defining conscious disregard, the California Supreme Court in *Taylor* employed a description consistent with *reckless* conduct." *Id.* at 467 (emphasis added); *see also id.* at 468 ("[C]onscious disregard within the meaning of CC § 3294 is consistent with reckless conduct as discussed by California cases, the *Restatement of Torts*, and [the Supreme Court's decision in] *Bullock*."). "Willful," as it is used in the definition of "malice," "refers only to the deliberate conduct committed by a person in a despicable manner," not to "a subjective intent to injury or a subjective belief that injury is substantially certain to result." *Id.* at 469.

The jury answered "yes" to the question asking whether any of Mahadevan's actions were done with "malice, oppression, or fraud." The jury was not asked to, and did not, distinguish among the three. The jury's finding could have been based on a finding of despicable malice or oppression, requiring the jury to find only that Mahadevan acted recklessly, not with a subjective intent to harm or with substantial certainty of harm. The jury was instructed that "malice" could mean either "intent to cause injury *or* that "Jagan Mahadevan's conduct was despicable and was done with a willful and knowing disregard of the rights of the rights or safety of another" because he was "aware of the probable dangerous consequences of his [] conduct and deliberately fail[ed] to avoid those consequences." The jury's disjunctive finding, that Mahadevan acted with malice *or* oppression *or* fraud, prevents the application of issue preclusion on the record Bikkina presented

at summary judgment, because the jury did not clearly decide that Mahadevan had acted with objective substantial certainty of harm or a subjective motive to cause harm.

### C.    Instructions on Remand

Bikkina has not provided sufficient evidence that he is entitled to issue preclusion on Mahadevan's *intent*; "that is, whether the debtor subjectively intended to cause injury or was substantially certain that injury would follow" from his conduct. *In re Plyam*, 530 B.R. at 470. The evidence that Bikkina has presented to the bankruptcy court—the California state-court jury verdict form, the jury instructions, his complaint, and the final judgment—are insufficient to prove Mahadevan's intent.  Bikkina, as the creditor, bears the burden of proving the elements of § 523(a)(6) by a preponderance of the evidence.  *See Grogan*, 498 U.S. at 287.  On remand, the bankruptcy court must consider this remaining issue of Mahadevan's intent for the purpose of applying § 523(a)(6).  Depending on the outcome of this inquiry, the Bankruptcy Court may need to consider whether Mahadevan's actions were "sufficiently justified under the circumstances." *See In re Vollbracht*, 276 F. App'x 360, 362 (5th Cir. 2007) ("[F]or an injury to be 'willful and malicious' it must satisfy [the Fifth Circuit's] two-part test and not be sufficiently justified under the circumstances to render it not 'willful and malicious.'").  And, again depending on the outcome of determining Mahadevan's intent under §523(a)(6), the bankruptcy court may need to determine what portion, if any, of the jury verdict is attributable to willful and malicious injury.  The jury awarded a lump-sum amount of $776,000 for negligence, intentional infliction of emotional distress, and defamation.  The jury awarded $315,000 for the defamation claim.  The jury awarded a single set of damages—$461,000—for the intentional infliction of emotional distress and negligence claims.  The special verdict form stated:

12.   Economic damages for past wage loss? Enter the amount below if you find that Jagan Mahadevan is liable to Prem Bikkina in the Negligence or Intentional Infliction of Emotional Distress section(s) above.

13.   Past noneconomic loss including physical pain/mental suffering, loss of enjoyment of life, humiliation, embarrassment, inconvenience, and emotional distress.  Enter the amount below if you find that Jagan Mahadevan is liable to Prem Bikkina [in] the Negligence or Intentional Infliction of Emotional Distress section(s) above.

(Docket Entry No. 2-1, at 552–53).   The jury awarded $461,000.

Mahadevan argues that because the jury awarded a single damage award for both the negligence and intentional infliction of emotional distress claims, the $461,000 in damages cannot be clearly traced to negligent or intentional conduct, and is therefore dischargeable.  (Docket Entry No. 4, at 35).  Bikkina argues that the "cause of action for Intentional Infliction of Emotional Distress, standing alone, wholly supports the general and special damages awarded [of $461,000] by the jury and no part of those damages need be attributable to the Negligence cause of action." (Docket Entry No. 5, at 12).   Put differently, if on remand the bankruptcy court finds that Mahadevan acted with an intent to cause harm as to the intentional infliction of emotional distress claim, Bikkina would be entitled to the full $461,000, even though the jury also awarded that amount for Bikkina's negligence claim.

Under California law, a plaintiff may seek damages under more than one legal theory, but "each item of damages may be awarded only once, regardless of the number of legal theories alleged."  *See In re Zeeb*, BAP No. CC-19-1019, 2019 WL 3778360, at *8 n.4 (B.A.P. 9th Cir. Aug. 9, 2019) (quoting *The Judicial Council of Cal. Civil Jury Instruction* 3934); *see also* Docket Entry No. 2-1, at 277 (instructing the jury that "Prem Bikkina seeks damages from Jagan Mahadevan under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged").  When the jury awarded Bikkina

18

$461,000 for "economic damages for past wage loss" and "past noneconomic loss including physical pain/mental suffering, loss of enjoyment of life, humiliation, embarrassment, inconvenience, and emotional distress," the jury found that he was entitled to damages for both his negligence claim and his intentional infliction of emotional distress claim.  The jury was instructed, however, that it could only award damages once.  The $461,000 in damages is "equally recoverable under both the [negligence] and [intentional infliction of emotional distress] claims."  *In re Lawson*, BAP No. NC-14-1153, 2015 WL 1291366, at *5 (B.A.P. 9th Cir. Mar. 20, 2015); *see also In re Zeeb*, 2019 WL 3778360, at *7–8.

If the bankruptcy court finds that Mahadevan was willful and malicious in inflicting emotional distress on Bikkina, then $461,000 of the judgment debt is nondischargeable.  If the bankruptcy court also finds that Mahadevan was willful and malicious in defaming Bikkina, then the entire $776,000 judgment debt is nondischargeable.

## IV.  Conclusion

The bankruptcy court's Judgment on Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6), granting summary judgment to Bikkina, is reversed.  This case is remanded for further proceedings.

SIGNED on July 26, 2022, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge

19